**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 24-cv-21376-RAR**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>            **Plaintiff,**<br><br>v.<br><br>**ZEALTHY, INC., a corporation, and,**<br>**KYLE ROBERTSON, individually,**<br><br>            **Defendants.** | <span style="color:red">Redacted version for public filing</span> |

**MEMORANDUM IN SUPPORT OF PLAINTIFF UNITED STATES'**
<u>**MOTION FOR PRELIMINARY INJUNCTION**</u>

**INTRODUCTION**

In an April 2025 internal Slack message, a Senior Software Engineer at Defendant Zealthy, Inc. ("Zealthy") remarked of Zealthy's CEO, defendant Kyle Robertson, ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 6, Affidavit of Giovan Aloisio ("Aloisio Aff."), at ¶ 22, while noting, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Evidence recently obtained by the government corroborates the engineer's first statement and makes his second appear prescient.

First, the evidence shows that Zealthy presents itself as providing legitimate telehealth services but is in fact engaged in systemic improper and dangerous telemedical practices. This includes the routine ordering of prescriptions by foreign call-center contractors and other non-clinicians with no medical license and the systemic misuse of the name and National Provider Identifier ("NPI") number of doctors to order many thousands of prescriptions for patients they did not actually treat or order a prescription for, and without their knowledge or clinical supervision—and even when they have not even been employed by Zealthy. *Id.* at ¶¶ 10-58.

Second, evidence shows Zealthy is bilking thousands of consumers each month through unauthorized charges that were not clearly and conspicuously disclosed to them as the Restore Online Shoppers' Confidence Act ("ROSCA) requires, 15 U.S.C. § 8403(1) —and even after consumers cancel subscriptions and serially instruct Zealthy to stop charging them, violating ROSCA's requirement of a simple cancellation mechanism. 15 U.S.C. § 8403(3). Aloisio Aff. at ¶¶ 59-88. These unauthorized charges are taking place at such scale that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g., id.* at ¶ 131(a).

Third, the evidence indicates that, since around October 2025, Robertson and Zealthy have been engaged in an ongoing fraudulent scheme to disguise Zealthy's transactions through

corporate façades intended to evade outside scrutiny and checks, and which are intentionally deceiving financial and credentialing institutions. *Id.* at ¶¶ 94-149. The evidence shows Defendants are now using these sham entities to surreptitiously process millions of dollars in monthly transactions for Zealthy. *See, e.g., id.* at ¶¶ 128-131. This scheme is now fostering, and covering up, Defendants' systemic ROSCA and FTC Act violations, and threatens to thwart recovery of consumer redress and the effectiveness of any judgment in this case. A receivership and asset freeze are necessary to ensure a bulwark against efforts to conceal assets and frustrate recovery in this lawsuit.

The government hereby moves for a preliminary injunction from this Court to halt Robertson and Zealthy's runaway campaign of lawbreaking, which is actively deceiving telehealth patients, endangering their safety, and raiding their bank accounts.

## **BACKGROUND**

The United States' Third Amended Complaint ("TAC"), ECF 220, alleges misconduct by Robertson and Zealthy that includes, among other alleged FTC Act and FTC Rule violations, undisclosed illegal telemedical practices such as the misuse of medical providers' National Provider Identifier ("NPI") numbers without their knowledge or consent in issuing prescriptions, TAC ¶¶ 203-225,[1] and the widespread issuance of unauthorized charges to consumers, *id.* ¶¶ 188-198, including by making it exceedingly difficult for consumers to cancel subscriptions and continuing to charge them even after they repeatedly tried to cancel. *Id.* ¶¶ 158-187.

---

[1] The NPI is a standard element required in state electronic-prescription regulations. *E.g.*, Fla. Admin. Code Ann. r. 64K-1.008(1)(f). Because the NPI is "[t]he standard unique health identifier for health care providers," it is a protected personal identifier under both state and federal law. 45 C.F.R. § 162.406(a). Accordingly, unauthorized use of another person's NPI to issue prescriptions violates both state and federal law. *E.g.*, Fl. Stat. § 817.568(2) (felonious use of another's personal identification information); 18 U.S.C. § 1028(a)(7) (identity theft via unauthorized use of another's means of identification).

The United States' first Complaint in this action was filed on April 12, 2024, but Zealthy and Robertson finally produced the bulk of their documents in response to Plaintiff's discovery requests within the last several months, including documents that demonstrate the scope of their misconduct and the urgent need for preliminary relief.[2] (Of the 115 Zealthy and Robertson documents cited in support of this preliminary injunction motion, 100 were produced in or after October 2025.) These documents reveal, among other things, an incipient fraud scheme that largely began to take shape around the fall of 2025 in the wake of Zealthy's loss of a key industry certification ████████████████████████████████████. Aloisio Aff. at ¶¶ 94-143. ████████████████████████████████████████

████████ *id.* ¶¶ 10-58, ████████████████████████████████████

████████████, *id.* ¶¶ 72-75, demonstrating the urgent need for preliminary relief. While this case has had a long shelf life, Defendants' recent productions and conduct establish the need for urgent relief. Indeed, the corporate entities now being used to perpetrate Defendants' misconduct did not even exist when this action was first filed. *Id.* ¶¶ 105-106, 133-134.

## ARGUMENT

I.      **This Court Has the Authority to Grant the Relief Requested**

Pursuant to the authority granted by Section 16(a)(1) of the FTC Act, 15 U.S.C. S. 56(a)(1), the United States seeks a preliminary injunction halting Defendants' continuing violations of the FTC Act and the Restore Online Shoppers' Confidence Act ("ROSCA") in connection with their telemedicine subscription business. The requested relief is authorized by Sections 13(b) and 19 of the FTC Act and Fed. R. Civ. P. 65.

---

[2] While Plaintiff has diligently sought discovery, Zealthy delayed production of documents from any non-customer support inboxes for many months, requiring multiple motions to compel and Court intervention. Plaintiff obtained key Zealthy custodians' documents only in the fall of 2025.

As the Eleventh Circuit has found, "Section 13(b) of the [FTC Act] authorizes the [government] to seek, and the district courts to grant, preliminary and permanent injunctions against practices that violate any of the laws enforced by the [FTC]." *FTC v. Gem Merchandising Corp.,* 87 F.3d 466, 468 (11th Cir. 1996). This "unqualified grant of statutory authority ... carries with it the full range of equitable remedies, including the power to grant consumer redress …." *Id*. Moreover, Section 19(b) of the FTC Act authorizes this Court to grant relief as it finds necessary to redress injury to consumers resulting from violations of FTC Rules such as ROSCA. Such relief may include "rescission or reformation of contracts, the refund of money [and] return of property ...." 15 U.S.C. § 57b(b). As discussed below, in cases involving FTC Act violations, courts in the 11th Circuit also routinely enter preliminary injunctive relief that includes a court-appointed receiver and asset freezes over corporate defendants where these measures are necessary to protect funds for eventual consumer redress and to forestall ongoing harm to consumers by ensuring compliance with court orders and the law.

## II.     Issuance of a Preliminary Injunction is Necessary and Appropriate

To obtain preliminary injunctive relief, the government must show (1) it is likely to succeed on the merits, and (2) injunctive relief is in the public interest. *FTC v. Univ. Health, Inc.,* 938 F.2d 1206, 1217–18 (11th Cir.1991). Unlike private litigants, the government need not demonstrate irreparable injury. *FTC. v. IAB Mktg. Assocs., LP*, 746 F.3d 1228, 1232 (11th Cir. 2014). Similarly, "[w]here an injunction is authorized by statute and the statutory conditions are satisfied ... the usual prerequisite of irreparable injury need not be established and [government] is not required to show irreparable injury before obtaining an injunction." *Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1423 (11th Cir. 1984) (citations omitted)). Nor need the

4

government show a "substantial likelihood of success" as required by private litigants. *FTC v. Acquinity Interactive, LLC*, 2021 WL 3603594, at \*2 (S.D. Fla. Aug. 13, 2021).

To show that it is likely to succeed on the merits, the United States need only present evidence that it "likely will prevail," rather than evidence that would justify a "final determination." *FTC v. Univ. Health, Inc.,* 938 F.2d 1206, 1218 (11th Cir. 1991). The United States satisfies the standard by establishing "some chance of probable success on the merits." *FTC v. Wash. Data Res.*, 2009 WL 4885033 at \*11 (M.D. Fla. Dec. 14, 2009), *aff'd in part, vac'd in part on other grounds by FTC v. Bishop*, 425 F. App'x 796 (11th Cir. 2011).

Under these standards, Plaintiff is entitled to preliminary injunctive relief.

### A.  The United States Is Likely to Succeed on the Merits

First, the evidence recited and compiled in the attached declarations and exhibits shows the United States is likely to succeed on the merits of its FTC Act and ROSCA claims involving the Defendants' unfair and deceptive telemedicine practices, cancellation obstacles, and issuance of endemic unauthorized charges to consumers. *See* TAC ¶¶ 283-295.

First, ROSCA requires that sellers of online, automatically recurring subscriptions clearly and conspicuously disclose all material terms of their subscriptions, 15 U.S.C. § 8403(1), and provide a simple cancellation mechanism to avoid recurring charges. *Id.* § 8403(3). But as the evidence detailed below shows, Defendants are signing up and charging consumers for automatically renewing subscriptions without disclosing substantial costs to them, continuing to charge them without providing simple cancellation mechanisms and even after they have attempted to cancel, and never disclosing (much less clearly or conspicuously) that subscribers' medical care and prescriptions might be illicit and outside the course of proper medical practice.

Second, these same practices are self-evident unfair and deceptive practices under the FTC Act. 15 U.S.C. § 45(a)(1); 15 U.S.C. § 45(n). They are deceptive under the FTC Act because they involve material misrepresentations to consumers regarding charges, cancellation ability, and the nature of Zealthy's telemedical practices. *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003). And they are unfair because they are (1) "likely to cause substantial injury to consumers"; (2) "not reasonably avoidable by consumers," since Defendants keep them hidden; and (3) "not outweighed by any countervailing benefits to consumers or competition." *See FTC v. Pointbreak Media, LLC*, 376 F. Supp. 3d 1257, 1285 (S.D. Fla. 2019). By trapping consumers against their will in subscriptions with recurring charges, failing to clearly and conspicuously disclose costs, preventing simple cancellation, and failing to disclose shocking and dangerous telemedical practices, Defendants are violating ROSCA and the FTC Act.

### i. Defendants Have Violated Section 5 and ROSCA Through Undisclosed, Unlawful Telemedicine Practices Directed by Robertson

Evidence shows that Robertson and Zealthy have routinely engaged in improper and dangerous telemedicine practices that have never been clearly or conspicuously disclosed to subscribers and that comprise unfair and deceptive acts. The evidence establishes more than a simple "likelihood" of success in demonstrating Defendants are violating the FTC Act and ROSCA through this misconduct. Telemedicine patients have a reasonable expectation that medical care and prescriptions they obtain will be issued and directed by legitimate medical professionals. But the evidence shows Zealthy has hidden from its subscribers rampant violations of that reasonable expectation to consumers' detriment. Perhaps in view of the commonsense nature of this issue, in a prior motion to dismiss briefing, Defendants did not dispute that alleged illicit telemedicine practices were unfair or deceptive. *See* ECF 162 at pp. 30-31.

6

Two whistleblower reports submitted to the Department by former Zealthy clinical employees after this lawsuit was filed have alleged systemic, improper telemedical practices at Zealthy, Aloisio Aff. at ¶¶ 14-20, including issuance of prescriptions by non-clinicians[3] and use of providers' NPI numbers without their knowledge to issue prescriptions.[4] Documents recently obtained by Plaintiff through discovery ███████████████████████████ ███████████████████████████████████████████████. *Id.* at ¶¶ 21-39.

First, Zealthy's internal documents show that ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████. *Id.* at ¶¶ 21-39, 47. ████████████████████ ████████████████████████████████████████████████████. ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

---

[3] A non-clinician is by definition not a licensed prescriber. Medicinal drugs, meaning drugs that must be dispensed by a pharmacist, may be prescribed only by a duly licensed provider. *E.g.*, Fl. Stat. § 458.327(1)(a) prohibits the practice of medicine without a license; the "practice of medicine" "means the diagnosis, … or prescription for any human disease, pain, injury, deformity, or other physical or mental condition," *id.*, § 458.305(3); and a "prescription" is defined as "any order for drugs or medicinal supplies … by a duly licensed practitioner authorized by the laws of the state to prescribe such drugs or medical supplies and intended to be dispensed by a pharmacist" or "an order written or transmitted by a practitioner licensed to practice in a jurisdiction other than this state," subject to the professional judgment of the dispensing pharmacist, *id.*, § 465.003(23).

[4] The unauthorized use of another person's NPI to issue a prescription violates both state and federal law. *See* note 1, *supra*.

7

 *Id.* In many other similar Slack exchanges, ████████. *Id.* at ¶¶ 21-39. The documents show ████. *See, e.g., id.* at ¶¶ 33-37.

Doctors whose names and NPI numbers have been used by Zealthy to order hundreds or even many thousands of prescriptions have explained that they had no idea their credentials were being used, never consented to this, did not participate in the clinical practices or supervision thereof, and that they discovered that this abuse of their credentials occurred even when they were not employed at Zealthy. *See, e.g., id.* at ¶¶ 47-48. One doctor only discovered abuse of his name and NPI when he found out that his former employer's mailroom was receiving copious mail for him—he then discovered mountains of prior authorization request responses from insurers listing him as the purported prescriber for Zealthy patients even though he had never sent or directed a single prior authorization request, or ordered or supervised the ordering of a single prescription, for a Zealthy patient. *See id.* at ¶¶ 18-20; 33-39; Ex. 2 (Declaration of Dr. Steven McDonald). Zealthy ordered more than 8,000 prescriptions using the name and NPI of another doctor not employed by Zealthy at the time, including, for example, prior authorization requests sent in his name more than a *year* after he had left the company. Aloisio Aff. at ¶ 47.

Zealthy's industrial-scale improper prescribing has yielded farfetched—and demonstrably bogus—prescription order records. For example, Zealthy has used the name and NPI of a single doctor who evidence suggests is not generally involved in treating its patients or directing their care to order vast quantities of prescriptions. *Id.* at ¶¶ 41-45. This includes more than *eleven thousand* prescriptions in a single month from one pharmacy, *id.* at ¶ 43, and more

than *one hundred thousand* prescriptions from one pharmacy in a less than two-year period through early 2026—with some daily totals exceeding one thousand prescriptions. *Id.* at ¶ 44.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████. *Id.* ¶¶ 23-28, 32-37. These practices have never been disclosed to consumers.

Zealthy's undisclosed, improper telemedical practices violate the most obvious default expectation of any telehealth consumer: that they are receiving legitimate, lawful medical care, including prescriptions supervised and issued by a competent medical provider. *See FTC v. On Point Cap. Partners LLC*, 17 F.4th 1066, 1079-1080 (11th Cir. 2021) (finding government is likely to succeed on the merits of an FTC Act claim under 15 U.S.C. § 45(a) where a material representation was likely to mislead consumers acting reasonably under the circumstances, including by inducing consumers to make purchases). The legitimacy of Defendants' clinical and prescribing practices go to "the heart of a consumer's decision to purchase a [telemedicine subscription]" and so are material. *FTC v. USA Beverages, Inc.* at *6 (granting preliminary injunction regarding FTC Act violations). Defendants' implicit misrepresentations regarding these practices are unfair and deceptive under the FTC Act. By the same token, the Defendants have violated ROSCA by failing to clearly or conspicuously disclose that Zealthy's medications within telemedicine subscriptions might be improperly prescribed or issued. This is a fact that would of course be of material importance to any telehealth subscription consumer.

Based on the apparent scope of this misconduct, it potentially implicates a significant portion of Defendants' proceeds. The Court should halt this misconduct and impose an asset freeze and receiver to ascertain the scope of potential consumer redress tied to these practices.

**ii.   Defendants Are Violating the FTC Act and ROSCA by Issuing Mass,
Unauthorized Charges to Consumers, Totaling Millions of Dollars**

Zealthy's bogus prescriptions have been tethered to endemic bogus charges to its
subscribers, which have similarly violated ROSCA and the FTC Act. Evidence overwhelmingly
shows that Defendants are running a massive, unauthorized charge racket. Aloisio Aff. at ¶¶ 59-
88. This includes by ███████████████████████████████████

███████████████████████████████████████████████████████████

██████   *Id.* at ¶¶ 61-66, 87. These practices are unfair and deceptive under the FTC Act and
violate ROSCA's cornerstone requirements of clear and conspicuous disclosure of material terms
and a simple cancellation mechanism for stopping recurring charges. 15 U.S.C. § 8403(1), (3).

Evidence recently gleaned from Zealthy's internal records reflects ███████████

████████████████████████. Aloisio Aff. at ¶¶ 67-71, 72-75, 86-87. ████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████. Persistent consumer complaints indicate that these unfair
charge practices continue unabated. *Id.* at ¶¶ 61-63, 87.

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████



*Id.* at ¶ 73.

*Id.* at ¶ 88. In a declaration, she has explained the tsunami of consumer complaint calls she fielded from consumers about

unauthorized charges and cancellation obstacles—demonstrating that, at Zealthy, ROSCA violations are an everyday business practice. *Id.*; Ex. 3 (Declaration of Melissa Wallburg). Concluding that Zealthy was "corrupt," she noted that "nearly every phone call coming in was from someone who wanted their money back." *Id.*

These unauthorized charge, and post-cancellation charge, practices violate the FTC Act by unfairly imposing charges on consumers that they have not authorized and against their objections. They also violate ROSCA by failing to provide a simple and effective mechanism to cancel subscriptions and avoid further charges. *See* ECF 162, Plaintiff's Opposition, at pp. 20-21; 30 n. 16; 43-46 (detailing issuance of unauthorized charges, including while preventing simple cancellations as, respectively, cognizable FTC Act and ROSCA violations).

Meanwhile, major card networks and payment processors



. Aloisio Aff. at ¶¶ 76-79.

. *Id.* at ¶¶ 94-143; *see infra* at pp. 13-15.

Just as egregiously, Robertson appears to be directing classic chargeback rate reduction fraud by using Zealthy-owned payment cards to pay for voluminous subscription sign-ups to artificially lower Zealthy's rate of chargeback disputes as reported to financial institutions. *Id.* at ¶¶ 89-93.

. *Id.* at ¶¶ 91-92. Evidence,

, *id.* at ¶ 93, and corroborating testimony from a former

employee, *id.*, reflect Zealthy's use of internal, test sign-up payments to mitigate Zealthy's high charge dispute rates with certain card networks. Ex. 4 (Declaration of Shayan Shams).

The evidence shows that Robertson and Zealthy are likely to continue to issue rampant unauthorized charges and prevent consumers from cancelling to avoid charges until a final judgment is entered. ███████████████████████████████████████████ ████████████████████, Aloisio Aff. at ¶ 75, ████████████████████████ ██████████████████████████████████. *See, e.g., id.* at ¶ 87. The Court should halt this misconduct and protect vulnerable consumers with a preliminary injunction.

## B. Evidence Indicates an Ongoing Scheme by Robertson and Zealthy to Conceal Zealthy's Transactions to Evade Scrutiny and Potentially Dissipate Assets

The gravity of the Defendants' unfolding misconduct, and the urgent need for a preliminary injunction, are underscored by evidence indicating a scheme is afoot by Robertson and Zealthy to hide Zealthy's transactions through recently established corporate entities that serve as covers for Zealthy's lines of business, and which may be used by Robertson and Zealthy to dissipate assets and frustrate recovery in this lawsuit. *Id.* at ¶¶ 94-143.

The evidence shows that in 2025, Zealthy lost its certification from a pivotal credentialing organization called LegitScript, *id.* at ¶ 98, that is widely treated as a compliance standard bearer for merchants engaged in telemedicine prescribing—so much so that major banks and payment processors generally refuse to facilitate transactions for a telemedicine prescribing merchant if they lack LegitScript certification, *id.* at ¶¶ 98, 100, 102, while major social media platforms such as Google and Facebook refuse to run online ads for such merchants. *Id.* at ¶ 101. In January 2025, Zealthy had failed to disclose this litigation in violation of LegitScript's policies. When LegitScript discovered this litigation, it determined that Zealthy


posed a reputational risk to LegitScript. *Id.* at ¶ 98; Ex. 5 (Declaration of Angela Salter). As a result, LegitScript revoked Zealthy's LegitScript certification. *Id.*

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███. Aloisio Aff. at ¶ 100. This created a ██████████████████████████████, *id.* at ¶ 103, ███████████████████████████████████████████████

██████████████████████████████████████████████. *Id.* at ¶¶ 102.

The evidence shows that Robertson and Zealthy have responded by launching █████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████ *Id.* at ¶¶ 104-132.

Evidence shows that Robertson and Zealthy have directed this establishment of ██████

████████████████████████████████████████████████████████████

██████████████████████████████████████████, *id.* at ¶¶ 107-108, 121-123, 126, ████████████████████████████████████████

████████████████████. *Id.* at ¶ 125-127. ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████. *Id.* at ¶¶ 113-114, 118-120, 138.

████████████████████████████████████████████████████████████

████████. *See, e.g., id.* at ¶¶ 107-109, 115-116, 122.



. *Id.* at ¶¶ 121-123. Recent consumers impacted by Zealthy's unauthorized charges in the midst of this shell game have expressed confusion at charges from unfamiliar company names as Zealthy toggled across alter egos. *See, e.g.,* Ex. 6-8 (Declarations of Jodene Cummings, Alexandria Sandberg, and Derek VanLuchene).

: these ongoing ploys can be used to redistribute Zealthy's assets and escape exposure, thus threatening to frustrate recovery in this lawsuit while undermining the effectiveness of judgment in this case. *See, e.g.,* Aloisio Aff. at ¶ 147

Robertson and Zeathy's

. These issues also militate in favor of a preliminary injunction to corral Zealthy and ensure it does not escape accountability, or persevere in wrongdoing, through these multiplying corporate façades.

### C.  The Balance of Equities Supports a Preliminary Injunction

Given the United States' likelihood of success on the merits, preliminary injunctive relief is warranted because a weighing of the equities shows that relief is in the public interest. The evidence submitted demonstrates that the public equities—such as protection of vulnerable consumers and the full and effective enforcement of the law—weigh heavily in favor of granting the injunctive relief requested in this case. *See FTC v. Simple Health Plans LLC*, 379 F. Supp. 3d

15

1346, 1363 (S.D. Fla. 2019), *aff'd*, 801 F. App'x 685 (11th Cir. 2020) (holding public interest of "enjoining conduct that violates the FTC Act, and preserving asserts…" was "entitled to great weight" and supported preliminary injunction).

There is a strong public interest in ensuring that the Defendants desist immediately from unfair and deceptive telemedicine practices involving illegitimate prescribing, and desist from issuing substantial, unauthorized charges. *Simple Health Plans LLC*, at 1363 (holding "[t]he public interest in ensuring the enforcement of federal consumer protection laws is strong") (citation omitted). Defendants have no legitimate interest in continuing these unlawful practices.

The Defendants' misconduct has continued despite this action brought by the United States to enjoin it. Given the pervasive nature of Defendants' violations, there is a strong likelihood that, absent injunctive relief, future law violations will occur. *See FTC v. Sw. Sunsites, Inc.*, 665 F.2d 711, 723 (5th Cir. 1982) ("a large-scale systematic scheme tainted by fraudulent and deceptive practices" gives rise to "fair inference of a reasonable expectation of continued violations absent restraint.'') (citation omitted); *FTC v. USA Fin., LLC*, 415 F. App'x 970, 975 (11th Cir. 2011) (holding injunction is appropriate where "the defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future.").

Any countervailing private equities in this case are not compelling. Compliance with the law is hardly an unreasonable burden. *See World Wide Factors,* 882 F.2d at 347 (affirming the district court's finding that "there is no oppressive hardship to defendants in requiring them to comply with the FTC Act, refrain from fraudulent representation or preserve their assets from dissipation or concealment."). And "[t]he public's interest in preventing consumers from being victimized … far outweighs any possible interest the defendants may have in continuing to [engage in the misconduct]." *FTC v. USA Beverages, Inc.* at \*8.

16

Consumers will continue to be at serious risk of harm if Defendants are not placed under a preliminary order that prohibits them from engaging in the same unlawful practices.

### D.  An Asset Freeze and Appointment of a Receiver Are Warranted

Plaintiff seeks preliminary injunctive relief that includes subjecting Zealthy to an asset freeze and appointing a receiver over it. Ex. 9 (Plaintiff's Recommendation and Receiver Letter of Interest).  Federal Rule of Civil Procedure 66 authorizes appointment of receivers. The Court has broad equitable discretion to appoint a receiver to preserve property and effectuate judgment.

An asset freeze is within the district court's equitable powers, including to preserve funds for eventual consumer redress stemming from violations of FTC Act rules. *FTC v. Gem Merch. Corp.,* 87 F.3d 466, 469 (11th Cir.1996) ("[A] district court may order preliminary relief, including an asset freeze, that may be needed to make permanent relief possible."); *FTC v. Simple Health Plans LLC* at 1364 ("The Eleventh Circuit has repeatedly upheld the authority of district courts to order an asset freeze to preserve the possibility of consumer redress."); *FTC v. USA Fin., LLC* at 976 (holding that maintaining asset freeze pending final disposition of case was "necessary to accomplish complete justice") (citation omitted). Similarly, "[t]he Court has authority to appoint a receiver for … [corporate defendants] pursuant to the Court's equitable powers under Section 13(b) of the FTC Act." *Id.* at 1365. A receiver is especially appropriate where there is "danger of property being lost … , diminished in value or squandered." *Id.* And in discussing receivers and asset freezes in the Section 13(b) context, courts have noted that "[b]ecause the public interest is involved, a district court's equitable powers … assume an even broader and more flexible character than when only a private controversy is at stake." *FTC v. Home Assure, LLC*, 2009 WL 1043956, at *2 (M.D. Fla. Apr. 16, 2009) (citation omitted).

17

The basis for a receiver is bolstered where, as here, "a defendant has used deception to obtain money from consumers…" *id.,* and where "[d]efendants have shown no ability or inclination to abide by the law." *FTC v. USA Beverages, Inc.* at \*8. In tandem with an asset freeze, a receiver can play a critical role in forestalling ongoing unfair and deceptive practices and preserving funds for redress. *Id. See FTC v. Simple Health Plans, LLC,* 801 F. App'x 685, 687 (11th Cir. 2020) (affirming asset freeze and appointment of receiver over defendants "to preserve the availability of funds for consumer redress" and to "maintain the status quo").

An asset freeze and appointment of a receiver over Zealthy are warranted to safeguard assets for consumer redress, to enable an impartial receiver to ascertain the scope of the Defendants' unlawful practices and resulting financial harm, and to ensure the Defendants' compliance with the law and this Court's orders. *Simple Health Plans* at 1365 (holding a receiver was necessary "to determine the full extent of defendants' deceptive practices, identify the victims of defendants' scheme, and prevent further fraudulent practices during the pendency of the preliminary injunction."); *FTC v. USA Beverages, Inc.* at \*8 (finding that "[a]ppointing a receiver … is essential to ensure that [corporate defendant] complies with the [Preliminary Injunction] Order, and to prevent … concealment or dissipation of assets."). In view of the government's strong public interest in ensuring available funds for consumer redress, "[t]he government's burden of proof in the asset-freeze context is relatively light" and, moreover, does not require "exactitude" in describing the basis for the asset freeze. *FTC v. IAB Mktg. Assocs., LP,* 746 F.3d 1228, 1234 (11th Cir. 2014); *SEC v. ETS Payphones, Inc.,* 408 F.3d 727, 735 (11th Cir.2005) (per curiam). Nor must particular assets be "traceable to the [unlawful] activity underlying a lawsuit" in order to be properly subject to the asset freeze. *FTC v. World Pat.*

18

*Mktg., Inc.*, 2017 WL 3508639, at \*17 (S.D. Fla. Aug. 16, 2017). The evidence here—which comfortably surmounts these modest thresholds—warrants an asset freeze and receivership.

First, these measures are warranted given that the misconduct extends to Defendants' core business and telemedicine practices. Second, they are especially warranted because, as noted above, evidence suggests the misconduct implicates, ███████████████. And since equitable relief under the FTC Act "may include a refund to the consumer of the full amount paid by the consumer to the Defendants," *FTC. v. Home Assure,* 2009 WL 1043956 at \*2, the appropriate scope for an asset freeze encompasses *all* Defendants' proceeds implicated by the misconduct.

Put bluntly, the consumer redress and FTC rule violation penalty amounts that Plaintiff seeks in this action may bankrupt Zealthy, rendering preservation of assets essential for consumer redress. *See FTC v. World Pat. Mktg., Inc.* at \*16 (noting that "disparity between [defendants' exposure and existing assets] … supports maintaining the asset freeze" over full, existing assets). Recent Zealthy financial records reflect cash reserves of ███████████ ████. *See* Aloisio Aff. at ¶ 71. ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████, it is plausible that Zealthy's available liquidity will fall short of its exposure in this litigation. Moreover, a Court-appointed receiver is an ideal instrument for rigorously determining the scope of applicable consumer redress and preserving necessary funds. *See FTC. v. IAB Mktg. Assocs.* at 1232 (highlighting receiver's use of accounting firm to ascertain scope and business source of funds).

A robust asset freeze is also justified where misconduct "taint[ed] the customer's purchasing decisions" by, for instance, misleading consumers about the nature of the services or

material charges. *FTC v. IAB Mktg. Assocs., LP,* 746 F.3d 1228, 1235 (11th Cir. 2014). This ground applies. Consumers unaware of Zealthy's illicit telemedicine and rampant unauthorized charges have had their purchasing decision tainted and key charges hidden from them.

Notably, in support of an asset freeze, "the [government] does not need to present evidence that the assets will be dissipated; rather, it need only show a concern that the defendants' assets will disappear." *Simple Health Plans* at 1364. ███████████ ████████████████████████████████████████████████████.

The need for an asset freeze and Receiver are strongly reinforced by ████████████ ████████████████████████████████████████████████████████. Aloisio Aff. at ¶¶ 91-141. ████████████████████████████████████████████ ██████████████████████████, necessitate a receiver to undertake a forensic accounting of Zealthy's accounts, to stop potential dissipation of assets, and to ensure that funds are preserved for eventual redress—while ensuring that outside organizations do not continue to be deceived and defrauded through these tactics. Zealthy's mounting legal troubles[5] further justify an asset freeze and receiver to forestall "deplet[ion] [of] the assets available for consumer redress." *Simple Health Plans* at 1364.

## CONCLUSION

For the reasons set forth above, the United States respectively moves this Court for a preliminary injunction halting Robertson and Zealthy's continued violations of the FTC Act and ROSCA and imposing an asset freeze and court-appointed receiver over Zealthy.

Dated: April 13, 2026                          Respectfully submitted,

---

[5] *See, e.g., Novo Nordisk A/S et al. v. Zealthy, Inc.*, No. 1:25-CV-06391, (S.D.N.Y Aug. 8, 2025) (lawsuit alleging false advertising and unfair and deceptive trade practices).

**FOR THE UNITED STATES OF AMERICA**

By: */s/ Francisco L. Unger*
Francisco L. Unger (A5503216)
Joshua A. Fowkes (A5503218)
Daniel K. Crane-Hirsch (A5501215)
Trial Attorneys

BRETT A. SHUMATE
Assistant Attorney General

SARMAD M. KHOJASTEH
Deputy Assistant Attorney General

Civil Division
LISA K. HSIAO
Acting Director
ZACHARY A. DIETERT
Assistant Director
U.S. Department of Justice
Civil Division
Enforcement & Affirmative Litigation Branch
450 5th Street, N.W. Suite 6400-South
Washington, D.C. 20044
joshua.a.fowkes@usdoj.gov
daniel.crane-hirsch@usdoj.gov
francisco.l.unger@usdoj.gov
Telephone: (202) 598-3855 (Unger)

Jason A. Reding Quiñones
United States Attorney
Southern District of Florida

Rosaline Chan
Assistant United States Attorney
Fla. Bar No. 1008816
United States Attorney's Office
99 N.E. 4th Street Miami, FL. 33132
Telephone: (305) 961-9335
Rosaline.Chan@usdoj.gov

*Counsel for Plaintiff the United States of America*

21